624

Gross & Keck, of Brooklyn, N. Y., for Title Guarantee & Trust Co.

Root, Clark, Buckner & Ballantine, of New York City, for Bush Terminal Rec.

Thach, Dick & Burroughs, of New York City, for Perth Amboy Dry Dock Co.

Mitchell, Taylor, Capron & Marsh, of New York City, for City Bank Farmers Trust Co., as Trustee.

Hays, St. John, Abramson & Schulman, of New York City, for Bush Terminal Co.

INCH, District Judge.

The Title Guarantee and Trust Company, as trustee, under the consolidated mortgage of Bush Terminal Company, brings this suit against the Bush Terminal Company, Perth Amboy Dry Dock Company and City Bank Farmers Trust Company, as trustee, etc.

It is not a suit to foreclose the mortgage. Essentially it is one to construe the mortgage as to the extent of the lien thereof. In addition plaintiff seeks to recover interest on interest for the holders of coupons of the bonds which had matured July 1, 1933, to January 1, 1937.

The material facts have been stipulated and it is therefore unnecessary, in this opinion, to set forth in detail the past history of the companies involved as same will appear in the findings and said stipulation of facts.

Briefly, on or about January 31, 1905, the Bush Land Company, subsequently and now known as the Bush Terminal Buildings Company, which will be hereafter referred to as the "Buildings Company", was incorporated with a total capital stock consisting of 100 shares of the par value of $100, each. Shortly prior to such incorporation of said Buildings Company, and on or about December 31, 1904, the Bush Terminal Company, which will be hereafter referred to as the "Terminal Company", executed a mortgage, called a consolidated mortgage. The plaintiff, Title Guarantee and Trust Company, was made the trustee under said mortgage indenture. As the Terminal Company was then the owner of said total capital stock, consisting of 100 shares, of the Buildings Company, such stock of the Buildings Company was then pledged as part of the security for the mortgage with the plaintiff, as such trustee, and this is how matters stood for approximately seven years thereafter.

On or about May 5, 1911, the Buildings Company increased its capital stock by providing for preferred and additional common stock. The Terminal Company purchased a substantial portion of this preferred stock, although an equally substantial portion was sold to the public generally. Five years later, in 1916, the capital stock in the Buildings Company was still further increased by approximately $2,000,000, consisting of 70,000 shares preferred and 20,000 shares of common stock. The Terminal Company thereupon purchased 9,900 shares of this newly established common stock and paid to the Buildings Company $990,000. A certificate for these 9,900 shares was issued on the books

of the Buildings Company in the name of Bush Terminal Company, delivered to it and has been in its possession since approximately 1916.

In the stipulation of facts it is agreed and admitted "that none of such shares were acquired by or through the use of any of the bonds issued under the consolidated mortgage or the proceeds thereof".

Thereafter the financial situation of the Terminal Company, which controlled the Buildings Company, resulted in an equity receiver suit and on or about April 31, 1937, this suit was terminated by proceedings under 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, in which a plan of reorganization was thereafter duly approved and confirmed, this court reserving jurisdiction to determine any issue which had not been disposed of by the reorganization plan.

█ That plan, in my opinion, disposed of any question of interest on coupons as it duly provided that all coupons matured at that date should be and they were paid in full. Any claim for interest such as is now made did not survive the payment pursuant to this plan, duly accepted by those who were so paid in full. Stewart v. Barnes, 153 U.S. 456, 14 S.Ct. 849, 38 L.Ed. 781.

About seven years ago, on or about September 5, 1934, the plaintiff asserted this present claim to these 9,900 shares of common stock of the Buildings Company on the theory that they also were subject to the lien of said consolidated mortgage and that therefore plaintiff, as such trustee, was entitled to the possession of the certificate which the Terminal Company had purchased out of its own funds and not by use of any of the bonds or the proceeds of such bonds which had been issued under the consolidated mortgage back in December 1904.

█ As I read the mortgage indenture it is plain that such additional shares belong to the Terminal Company and were not intended to nor did they become, subject to the mortgage lien and there is no need of extrinsic evidence in order to so construe it. Even if such evidence is considered it makes equally plain that the parties to the mortgage at no time intended or considered that any shares, other than the said 100 shares originally transferred to the trustee, were to be subject to the lien of the mortgage.

In order to extend the lien of this mortgage this additional and after-acquired shares in 1916, twelve years after the making of the mortgage, both the intent that same should be so subject and such extension of the lien of the mortgage, should clearly appear in the mortgage indenture, whereas, in this case, there is no ambiguity, and, if the court found that there was some ambiguity, the circumstances lack that clear evidence by which such intent could plainly be seen from the action of the parties. Chase National Bank v. Sweezy, Sup. S.T., 281 N.Y.S. 487, affirmed 236 App.Div. 835, 259 N.Y.S. 1010; Id., 261 N.Y. 710, 185 N.E. 803.

This indenture before me plainly indicates that the lien of this mortgage, in addition to the 100 shares of original capital stock of the Buildings Company, was intended to cover the real and personal property then existing of the mortgagor or any property that might thereafter be acquired "through the use of the bonds of the issue hereby secured or the proceeds resulting therefrom".

As I have said several times it is stipulated that this stock now sought by plaintiff was not acquired through the use of the bonds in question or through their proceeds. On the contrary it was property duly purchased approximately twelve years after the making of the mortgage by the Terminal Company, from its own funds and became and is its own property. Not only is the mortgage clear in this regard but any other construction would mean that the Buildings Company would be most unwisely, unnecessarily and seriously handicapped in its natural expansion. Such construction would offend good business judgment.

I feel that in pressing this suit after these years, and in view of the past history which has been briefly referred to, the trustee seeks to relieve itself of any criticism that might arise from its failure to assert such claim rather than entertain a serious hope that there is merit to its claim for additional interest and additional property of the Terminal Company.

To be sure, while extrinsic evidence is not necessary, a great deal is made by the

plaintiff of the fact that at some of the meetings of stockholders the erroneous statement was made in the minutes that the plaintiff, as such trustee represented 9,997 shares of the Buildings Company. However, there was never any such proxy ever given or executed. There was at all times a proxy as to the 100 shares. The draftsman of such minutes, or anyone interested, could have easily ascertained the plain error, for the books of the company would clearly show the true fact, that the Terminal Company was the owner of the 9,900 shares for almost eighteen years before any such claim was even indicated or made by the trustee.

While I do not think that it is necessary to hold that the approval and confirmation of the plan of reorganization adjudicated the question here presented it is plain that any rights such as are now claimed by the plaintiff were affected by the plan that was duly approved and confirmed and that this occurred without any objection on the part of plaintiff to a plan which adjudicated that the mortgage bondholders of the mortgagee in question were not materially and adversely affected by such plan. All of the facts, now relied on were before the court and it would seem that then would have been the time, if plaintiff really felt that there was any merit to the claim, for it to bring such objection to the attention of the court and those proposing the plan.

To be sure no distinction is made in this suit between the preferred and the common stock after-acquired but such failure to explain is immaterial as the plaintiff is not entitled to any of this after-acquired stock since it is not covered by the lien of the mortgage and the bondholders have no right to interest on interest. Williamsburgh Savings Bank v. Solon, 136 N.Y. 465, 32 N.E. 1058.

There are other things that appear in the approval of the plan by those interested, none of which indicate a different result than that now arrived at by the court, such as the unopposed action of the trustee in reorganization, in giving the consent to the plan, but, as extrinsic evidence is not necessary, in view of the plain wording of the indenture, there is no necessity for further mention of such isolated facts.

Accordingly, the complaint is dismissed, with costs. Submit findings of fact and conclusions of law.